THOMAS S. HARLOW *vs.* WILLIAM DEHON & others.

In 1852, P. received a sum of money belonging to W., in trust, and covenanted in an instrument under seal that, until he invested the sum as a special trust fund, he would pay interest thereon to W., and, when the sum was so invested, would pay W. the income thereof; that on the death of W. he would pay over said sum, or the securities in which it was invested, or the proceeds thereof, to W.'s administrator; and that, in case of his death before W., his executors should execute the same trusts. In 1853, P. died, not having invested said sum; in the same year his executors were qualified, and in 1855, the executors having resigned, administrators *de bonis non* of his estate were appointed. In 1859, W. having died, an administrator of his estate was appointed, and in 1867 the administrator of W. brought a bill in equity against the administrators and the heirs and devisees of P. for the payment of said sum, contending that his claim was to enforce a trust, and was therefore not barred by the Gen. Sts. *c.* 97, § 5, and *c.* 101, § 32. *Held*, that if the claim was to enforce a trust at all, it was at most a constructive trust, and was therefore barred at any rate by the lapse of six years from the appointment of W.'s administrator.

BILL IN EQUITY, filed July 30, 1867, by the administrator *de bonis non* of the estate of Charles Woods against William Dehon and John H. Swasey, administrators *de bonis non*, with the will annexed, of the estate of William H. Prentice. The bill was subsequently amended by making the heirs, who were also the residuary devisees, of William H. Prentice, defendants.

The case, as it appeared from the pleadings and agreed statement of facts, on which it was reserved by *Morton*, J., for the consideration of the full court, was as follows:

In 1852, the executors of the will of Samuel Woods, the father of Charles Woods, placed in the hands of William H. Prentice a sum of $2000 belonging to Charles Woods; and William H. Prentice and Charles Woods signed and sealed the following instrument:

"Know all men by these presents, that I, William H. Prentice, having received from the executors of Samuel Woods, deceased, the sum of two thousand dollars, upon special trusts, and in consideration of one dollar to me paid by Charles Woods, his son, the receipt whereof I hereby acknowledge, do hereby covenant and agree as follows, to wit:

"1. That until the said sum of two thousand dollars shall be by me invested as a special trust fund in stocks or securities, real

or personal, I will quarter-yearly pay to said Charles Woods, upon his personal order or receipt, or will expend and apply for his board and personal comfort, in such manner as I may think necessary or expedient, the interest thereon at the rate of six per cent. per annum, without deduction, the payment and expenditure to be subject to the claims or control of no other person whatsoever; and his own personal order or receipt or my own appointment of the proceeds at my discretion is to be a full discharge of all claims on me for such interest. Whenever the said sum shall be invested as aforesaid, I am to pay or expend the net income of such investment, whatever the amount thereof, in the same manner and with the same discretion.

"2. At the decease of said Charles Woods, I covenant to pay the said sum of two thousand dollars, or the stocks or securities in which the same may be then invested, or the proceeds thereof, whatsoever the same may be, or the amount thereof, deducting all proper charges, to such person or persons and in such sums or on such terms in all respects as said Charles Woods by his last will and testament may appoint. If he leave no such testamentary appointment, then to the administrator of his estate legally appointed, for the use of his legal heirs.

"3. Provided, however, that if said Charles Woods shall so request of me, and if in my discretion I shall at any time deem it expedient so to do, I hereby reserve to myself the power of discharging myself of all these covenants and trusts by paying over the said two thousand dollars, or transferring the funds so invested into the hands of said Charles Woods, upon his personal receipt (the interest or income to such time of payment having been also paid or applied as aforesaid); in which case all the other stipulations and provisions aforesaid shall become null and void thereafter, but only upon my absolute discretion as aforesaid.

"4. The claims, contingent or otherwise, of said Charles Woods upon said principal sum, interest or income, shall be subject to no alienation, anticipation or charge; nor shall any assignee, creditor or other person claiming under or through him have any right of action or interest therein, excepting only his legal representatives, in case of decease as aforesaid.

" 5. In case of my decease before said Charles Woods, my executors or administrators shall execute the same trusts ; or I may by my deed or will, in my lifetime or at my decease, substitute another trustee or trustees to execute the same ; but if said Charles Woods shall dissent from such substitution, the judge of probate for the county of Middlesex, in his official or private capacity, may appoint my successor or successors until the end of the trust. Such successors shall have all the powers and absolute discretion in every respect, both as to the continuance or termination of said trust in the manner aforesaid, as well as in other respects, as is to myself personally reserved in these presents.

" 6. I and my successors are to be chargeable only for wilful misfeasance, and shall have a right to a reasonable compensation after the investment of the fund as aforesaid. And we will account therefor at all times when reasonably requested.

" The said Charles Woods assents to these presents on his part, and certifies the same by subscribing hereunto."

In March 1853, William H. Prentice died without having invested said sum or any part thereof as a special trust fund for the benefit of Charles Woods, and without having paid or applied any part of the principal or interest to Charles Woods, or for his benefit or support ; and leaving a will which contained no provision concerning the appointment of a trustee for Charles Woods, and no mention of the $2000.

The will was proved April 18, 1853, and on the same day the defendant Swasey, George W. Prentice and Zabdiel B. Adams were duly appointed and qualified as executors, and gave due notice of their appointment according to law. On May 28, 1855, Adams having died, Swasey and George W. Prentice resigned the trust of executors, and on the same day Swasey and the defendant Dehon were appointed administrators *de bonis non* of the estate of William H. Prentice, and gave due notice of their appointment according to law.

Charles Woods died intestate in February 1858, and George S. Woods was appointed administrator of his estate in August 1859, and remained such until his death in February 1867. In June 1867 the plaintiff was appointed administrator *de bonis non* of the

estate of Charles Woods, and on July 26, 1867, demanded of the defendants Dehon and Swasey said sum of $2000 and interest. They refused to pay.

Neither the executors nor the administrators *de bonis non* of William H. Prentice ever applied any part of the principal or interest of said sum for the support or benefit of Charles Woods, nor ever paid any part thereof to him or his representatives, nor was any demand made on them for such payment or for any act in relation to said sum, until the demand of July 26 above mentioned.

At the time of filing the bill there was real estate of William H. Prentice held by his heirs and devisees, as tenants in common, to a value much exceeding the amount of the plaintiff's claim.

*H. W. Paine & T. S. Harlow*, for the plaintiff.

*J. D. Bryant*, for the defendants.

WELLS, J. This claim arises upon a sealed instrument. If it be regarded as a debt due from the testator, or a demand against his estate, though not barred by the general statute of limitations, yet it is barred by the limitation of actions against executors and administrators; Gen. Sts. *c.* 97, § 5; and if considered as first accruing upon the death of Charles Woods, it is barred as against the heirs and devisees of William H. Prentice, because the suit was not brought within one year thereafter. Gen. Sts. *c.* 101, § 32.

The plaintiff contends, however, that the suit is brought to enforce a trust; and that such rights are not affected by statutes of limitation. That principle is a sound one when rightly applied. It might have been a sufficient answer to William H. Prentice pleading the general statute of limitations against Charles Woods, in the lifetime of both, after the lapse of twenty years from the date of the instrument of trust. It is applicable to actual subsisting trusts which are continuous in their nature, and not terminated; and to those which attach to specific property, or to a particular fund in the hands of the party sought to be charged therewith. *Kent* v. *Dunham*, 106 Mass. 586.

The trust in this case did not, in its inception, attach to any specific property. It was not made specific by the testator in his

lifetime. All his property passed to his executors as assets to be administered upon, according to his will. He did not, by his will, charge his estate, or any part of it, with this trust; nor impose it upon his executors by any direction to them. As to them,. the agreement with Charles Woods was a mere personal obligation of their testator, even that part of it which stipulated that his executors or administrators should " execute the same trusts." It affected them, not as a part of their trust as executors, but as all the personal obligations of their testator did, by constituting a charge against the estate in their hands, imposed upon it and them by law, and to be recognized and enforced according to the provisions and subject to the limitations provided by law therefor.

Even if the administrators *de bonis non*, by reason of their succession to property of the testator, might be held chargeable with the trust, to the extent of the property so received and held by them, yet the death of Charles Woods terminated the trust; and thereupon the only obligation or duty remaining was to pay over the amount to his appointee or administrator. Such administrator was appointed in August 1859. A right of action then accrued for the amount of the trust fund, against which the general statute of limitations at once began to run. Their liability upon this ground, if any arose, was that of a mere constructive trust, against which it is held that the general statute of limitations may be set up as a bar. *Trecothick* v. *Austin*, 4 Mason, 16, 29. *Robinson* v. *Hook*, Ib. 139, 152. *Farnam* v. *Brooks*, 9 Pick. 212, 243. *Johnson* v. *Ames*, 11 Pick. 173, 182. Their liability would not be upon the instrument, nor in their representative capacity; *Holden* v. *Fletcher*, 6 Cush. 235; but by implication of law from the possession of the fund from which the trust ought to be discharged. It would be in simple contract therefore, for which six years, and six years only, would be required to complete the bar.

By amendment of the bill, the heirs and devisees of William H. Prentice have been made parties. But as against them the claim can stand no stronger than against the administrators. If it could ever have been maintained as a constructive trust, it

is barred by the general statute of limitations. When the bill was brought, more than six years had elapsed since the claim became absolute. The full amount due was then recoverable by an action in proper form, upon the obligation of the testator, under the Gen. Sts. *c.* 101, § 32. That right of action is clearly barred. If any right of action other than that has ever accrued against the heirs and devisees, it accrued at the same time ; and the limitation of six years is a complete bar thereto.

*Bill dismissed.*